ANDRE A. VEILLEUX *v.* COMPLETE INTERIOR SYSTEMS, INC., ET AL.
(SC 18232)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

_____

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued December 8, 2009—officially released June 1, 2010

*Frank W. Russo*, with whom, on the brief, was *Jon D. Berman*, for the appellant (plaintiff).

*Robert S. Bystrowski*, with whom was *Cristin E. Sheehan*, for the appellees (defendants).

*Robert F. Carter* and *Joram Hirsch*, filed a brief on behalf of the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

VERTEFEUILLE, J. The plaintiff, Andre A. Veilleux, appeals from the decision of the compensation review

board (board) affirming the decision of the workers' compensation commissioner for the eighth district (commissioner) dismissing his claim for benefits from the defendants, Complete Interior Systems, Inc. (Complete Interior), and Wall Board Systems, Inc. (Wall Board), and several of its workers' compensation insurers,[1] on the ground that it was time barred under General Statutes § 31-294c[2] because the plaintiff failed to file his workers' compensation claim within one year of sustaining his repetitive trauma injury. The dispositive issue in this appeal is whether the board properly concluded that the commissioner was not required to follow *Discuillo* v. *Stone & Webster*, 242 Conn. 570, 698

[1] Several insurance companies, including Star Insurance Company, Meadowbrook Claims Services and The Hartford Insurance Group also were parties to the workers' compensation proceedings and were named as defendants in the present case. For purposes of clarity, joint references herein to the defendants are to only those three insurers and Complete Interior and Wall Board. The Second Injury Fund, which was also a defendant in this matter, has not filed a brief in this appeal.

[2] General Statutes § 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within the two-year period or within one year from the date of death, whichever is later. Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. An employee of the state shall send a copy of the notice to the Commissioner of Administrative Services. As used in this section, 'manifestation of a symptom' means manifestation to an employee claiming compensation, or to some other person standing in such relation to him that the knowledge of the person would be imputed to him, in a manner that is or should be recognized by him as symptomatic of the occupational disease for which compensation is claimed."

A.2d 873 (1997), and make a specific finding as to whether the plaintiff's repetitive trauma injury "more closely resembles" an accidental injury or an occupational disease to determine which limitations period under § 31-294c applied. See id., 580. We reverse the board's decision.

The commissioner's decision and the record reveal the following undisputed facts and procedural history. The plaintiff commenced employment with Complete Interior and Wall Board in 1992 as a carpenter and was promoted to carpenter/supervisor during his ten years of employment with the two companies. During his employment, the plaintiff installed acoustic ceilings, metal studding, and Sheetrock on walls and ceilings. The plaintiff's employment with Complete Interior and Wall Board ended in March, 2002.

In November, 2003, the plaintiff was diagnosed with cervical myelopathy and myelomalacia.[3] At around this same time, the plaintiff was first informed by his physician that these conditions were likely a result of the strain on his spinal cord caused by his years of work carrying and installing Sheetrock, including carrying Sheetrock by balancing it on his head.

On March 12, 2004, the plaintiff filed a claim for workers' compensation benefits pursuant to § 31-294c alleging that he suffered "[s]evere degenerative disc disease . . . caused by . . . repetitive trauma to the cervical spine from frequent overhead work, and frequent carrying of heavy materials on [his] head and shoulders." Thereafter, the defendants filed a motion to dismiss claiming that the plaintiff's claim was barred by the time limitation set forth in § 31-294c.

---

[3] "[C]ervical" is defined as "[r]elating to a neck, or cervix, in any sense." Stedman's Medical Dictionary (28th Ed. 2006). "[M]yelopathy" is defined as a "[d]isorder of the spinal cord." Id. "[M]yelomalacia" is defined as a "[s]oftening of the spinal cord." Id.

In May, 2007, the commissioner issued his findings and dismissed the plaintiff's claim. The commissioner found that the plaintiff had not established by a preponderance of credible scientific and medical evidence that neck compression injuries suffered by drywall installers rose to the level of an occupational disease. Specifically, the commissioner found that the plaintiff "[had] not submitted any definitive scientific or medical studies regarding the number of cervical injuries sustained by [S]heetrock installers that would permit a conclusion that such work and possible risk factors result in medical claim[s] for cervical injuries thereby warranting a finding that such injuries and risk factors justify a finding that [the plaintiff's] cervical injury is so unique that it should qualify as an occupational disease claim." The commissioner therefore concluded that the one year filing limitation for accidental injuries under § 31-294c applied to the plaintiff's claim and that the plaintiff had not filed his claim for benefits within the one year filing period. Accordingly, the commissioner found that the plaintiff had not satisfied the jurisdictional requirements of § 31-294c and dismissed his claim.

The plaintiff appealed from the commissioner's decision to the board, challenging the commissioner's finding that § 31-294c required the plaintiff to file a notice of claim within one year of his repetitive trauma injury. The plaintiff claimed that the commissioner improperly had failed to find whether the plaintiff's repetitive trauma injury more closely resembled an occupational disease or an accidental injury for purposes of determining whether he had met the jurisdictional requirements of § 31-294c, as required by *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 570. The board affirmed the findings of the commissioner and dismissed the plaintiff's appeal. This appeal followed.[4]

---

[4] The plaintiff appealed from the board's decision to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. Filing a notice of claim or . . . satisfaction of one of the . . . exceptions [contained in § 31-294c (c)] is a prerequisite that conditions whether the commission[er] has subject matter jurisdiction under the [Workers' Compensation Act, General Statutes § 31-275 et seq.]. . . . *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 534, 829 A.2d 818 (2003); *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 5–6, 675 A.2d 845 (1996). [B]ecause [a] determination regarding . . . subject matter jurisdiction is a question of law, our review is plenary. . . . *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410, 722 A.2d 271 (1999); *Anastasio* v. *Mail Contractors of America, Inc.*, 69 Conn. App. 385, 392, 794 A.2d 1061, cert. denied, 261 Conn. 914, 915, 806 A.2d 1053 (2002)." (Internal quotation marks omitted.) *Estate of Doe* v. *Dept. of Correction*, 268 Conn. 753, 757, 848 A.2d 378 (2004).

We begin our analysis with § 31-294c, which establishes the filing periods for workers' compensation injuries. Section 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given *within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease*, as the case may be . . . ." (Emphasis added.) As the text sets forth, the statute provides for two alternate time limitations for filing a claim for compensation depending on the cause of the injury. If the injury was caused by an accident, the statute requires that the claimant file a claim for compensation within one year from the date of the accident. If the injury was caused by an occupational disease, the statute requires that the claimant file a claim for compensation within three years from the first manifes-

tation of a symptom of the occupational disease. The statute is silent, however, with regard to the applicable filing period for a repetitive trauma injury, thus giving rise to a question: which of the two filing periods applies to a repetitive trauma injury? This court addressed this identical issue in *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 570.

In *Discuillo*, the plaintiff was a painter whose job responsibilities required him to climb ladders to work on scaffolding while carrying heavy equipment and paint. While performing his job duties, the plaintiff frequently was pressured by supervisors to work within particular time constraints. In November, 1982, the plaintiff suffered a heart attack after working an entire day on scaffolding using heavy equipment. The plaintiff did not work after that date, but did not relate his heart attack to job stress until September, 1984, when he read a newspaper article about a similar incident. Id., 572. Soon thereafter, the plaintiff filed a claim for workers' compensation benefits. The defendant employer contested his claim on the ground that, inter alia, it was barred by the time limitation in then General Statutes § 31-294, which is now codified at § 31-294c. The commissioner determined that the plaintiff's claim was not time barred because he had filed the notice of claim within one year of the date on which he understood the causal relationship between his heart attack and his job responsibilities and stress. Id., 573. The defendant appealed to the compensation review board, which reversed the commissioner's decision. Specifically, the board concluded that a heart attack is an accidental injury and not an injury that is the direct result of repetitive trauma, and, therefore, pursuant to § 31-294c, notice of claim for a heart attack must be filed within one year of the heart attack. Id. The Appellate Court then affirmed the board's decision. *Discuillo* v. *Stone & Webster*, 43 Conn. App. 224, 682 A.2d 145 (1996). This

court then granted certification to the plaintiff to appeal. *Discuillo* v. *Stone & Webster*, 239 Conn. 953, 688 A.2d 325 (1996).

This court began its analysis by acknowledging the dilemma posed by the statute. "The workers' compensation scheme explicitly provides for three categories of compensable injury: (1) accidental injury; (2) repetitive trauma injury; and (3) occupational disease. . . . The mere fact that an injury is of a type that is compensable, however, does not of itself mean that the commissioner properly may consider a claim based on that injury. The notice and filing prerequisites of [what is now § 31-294c], which are jurisdictional . . . must also be satisfied. . . . The difficulty in the present case arises from the fact that although [that statute] specifically addresses the jurisdictional filing prerequisites that must be satisfied in order to bring an accidental injury or occupational disease claim, the statute is silent both as to the duration of the filing period for repetitive trauma claims and as to when that period begins to run." (Citations omitted.) *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 574–75.

This court then explained: "We therefore conclude that, for a commissioner to have jurisdiction over a claim, that claim must fit within the existing jurisdictional provisions of [§ 31-294c]. In other words, for purposes of jurisdiction, every cognizable claim must be considered as stemming from either an 'accident' or an 'occupational disease' as those terms are used in [§ 31-294c]. We acknowledge, however, that [what is now General Statutes § 31-275 (16)],[5] which includes repeti-

---

[5] General Statutes § 31-275 (16) (A) provides: " 'Personal injury' or 'injury' includes, in addition to accidental injury that may be definitely located as to the time when and the place where the accident occurred, an injury to an employee that is causally connected with the employee's employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease."

The statutory definitions relevant to the plaintiff's injury in *Discuillo* were included in General Statutes (Rev. to 1981) § 31-275 (8). See *Discuillo* v.

tive trauma claims in the definition of compensable injury, evinces a definite legislative intent to allow compensation for that class of harm. In order to reconcile these competing mandates, we conclude that the terms 'accident' and 'occupational disease' as they are used in [§ 31-294c] must be read broadly enough so that even an injury that is defined as stemming from repetitive trauma pursuant to [§ 31-275 (16) (A)] may nonetheless be deemed to fall into one of the two extant jurisdictional categories, as appropriate to the specific facts of each particular claim." Id., 577–78.

This court in *Discuillo* then went on to examine whether the plaintiff's heart attack resembled an accidental injury or an occupational disease. In doing so, this court examined the definition of the term " '[o]ccupational disease,' " which is defined in what is now § 31-275 (15) as including "any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such . . . ." See footnote 5 of this opinion. This court then recognized that, "[i]n interpreting the phrase occupational disease, we have stated that the requirement that the disease be peculiar to the occupation and in excess of the ordinary hazards of employment, refers to those diseases in which there is a causal connection between the duties of the employment and the disease contracted by the employee. In other words, [the disease] need not be unique to the occupation of the employee or to the work place; it need merely be so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted." (Internal quotation marks omitted.) *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 578–79. This court then concluded that "labeling the plaintiff's heart attack as an

*Stone & Webster*, supra, 242 Conn. 575 n.24. These definitions are now codified at § 31-275 (16).

accidental injury for jurisdictional purposes is appropriate under the facts of this case, because, of the two choices available under [§ 31-294c], the plaintiff's heart attack more closely resembles an accidental injury than an occupational disease." Id., 580.

With this understanding of *Discuillo* in mind, we now turn to the claims in the present case. The plaintiff claimed that he suffered from a compensable repetitive trauma injury, which apparently was not disputed. Therefore, the commissioner had to decide whether the injury more closely resembled an accidental injury, to which the one year statute of limitations period applies, or whether it more closely resembled an occupational disease, to which the three year statute of limitations applies. The plaintiff asserts that the three year period applied to his claim because his repetitive trauma injury more closely resembled an occupational disease. The defendants respond that the board properly affirmed the commissioner's determination that the one year statute of limitations applied to the plaintiff's claim.[6] We agree with the plaintiff that the board improperly concluded that the commissioner was not obligated to follow the approach set forth in *Discuillo*.

In the present case, the board affirmed the determination of the commissioner dismissing the plaintiff's appeal as time barred because he failed to file his repetitive trauma claim within the one year filing period. In doing so, the board rejected the plaintiff's claim that the commissioner should have complied with *Discuillo*,

---

[6] The defendants also claim in their brief that the plaintiff's injury cannot be characterized as an occupational disease for jurisdictional purposes as a matter of law because it does not constitute an immunologic or systemic harm. We understand the plaintiff's claim to be an alternate ground for affirmance, although it was not formally raised that way. We are not bound, however, to consider this claim because it was not distinctly raised in the workers' compensation proceedings. See, e.g., *Gallo* v. *Barile*, 284 Conn. 459, 478 n.15, 935 A.2d 103 (2007) (declining to consider alternate ground for affirmance because claim not raised at trial).

and it concluded instead that the commissioner was *not* required to make a specific finding as to whether the plaintiff's repetitive trauma injury " 'more closely resembles' " an accidental injury or occupational disease.[7]

We conclude that the board, and the commissioner as well, improperly failed to employ the *Discuillo* approach to determine the applicable filing period for the plaintiff's repetitive trauma injury. We therefore reverse the decision of the board, which affirmed the commissioner's dismissal of the plaintiff's claim.

The defendants assert that this case is similar to *Francis* v. *Connecticut Valley Hospital*, 56 Conn. App. 90, 741 A.2d 966 (1999). In *Francis*, the commissioner awarded the plaintiff compensation benefits for an injury resulting from her exposure to chemicals in the defendant employer's workplace. Id., 91. The commissioner concluded that the plaintiff did not suffer from an occupational disease, but that she had, instead, suffered from an accidental injury. Id., 95. The commissioner, however, did not make a finding as to whether the plaintiff suffered from a repetitive trauma. Id., 93 and n.2. The employer appealed from the commissioner's

---

[7] In affirming the decision of the commissioner, the board also relied on the plain language of § 31-275 (15) and (16) to support its conclusion that "the statute clearly places the concept of 'occupational disease' as a separate category from an ordinary 'personal injury,' which the statute defines as encompassing both a single incident 'accidental injury' and injuries which are the result of repetitive trauma." We disagree and determine that this conclusion of the board is directly contrary to this court's explicit conclusion in *Discuillo* v. *Stone & Webster*, supra, 242 Conn. 574, that "[t]he workers' compensation scheme explicitly provides for three categories of compensable injury: (1) accidental injury; (2) repetitive trauma injury; and (3) occupational disease." We do not write on a clean slate on this issue, but are bound by our previous judicial interpretations of this language and the statutory scheme. See *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007) (holding that General Statutes § 1-2z does not require this court to overrule prior judicial interpretations of statutes, even if not based on plain meaning rule).

decision to the board, claiming that the commissioner should have made a determination as to whether the plaintiff suffered from a repetitive trauma. Id., 91–92. The board affirmed the decision of the commissioner and the employer appealed from that ruling to the Appellate Court. Id., 92. The Appellate Court affirmed the board's decision, concluding that, "[b]ecause the statute of limitations period in the present case would be the same for a repetitive trauma injury or an accidental injury, we need not decide whether the plaintiff suffered repetitive trauma. Even if we were to decide, however, that the plaintiff's lung injury is by definition one of repetitive trauma, her specific injury would still be deemed an 'accident' for the jurisdictional purposes of [what is now § 31-294c]." Id., 93 n.2. We conclude that the Appellate Court's holding in *Francis* is entirely consistent with our holding in the present case. Although the commissioner in *Francis* did not make a determination as to whether the plaintiff's injury was caused by a repetitive trauma, the commissioner made the determination that was essential for jurisdictional purposes, namely, whether the injury was from an accident or an occupational disease.[8] In the present case, it is the commissioner's failure to make that essential

---

[8] We do not intend to suggest, however, that we agree with the Appellate Court in *Francis* that there is no substantive difference between an accidental injury and a repetitive trauma deemed an accidental injury for purposes of the limitations period for filing a claim. Under our case law, although both injuries are subject to a one year limitations period, the date of the injury that commences that one year period differs. For a repetitive trauma deemed to be an accidental injury, "the date of injury is the last day of exposure to the work related incidents of repetitive trauma . . . ." (Internal quotation marks omitted.) *Malchik* v. *Division of Criminal Justice*, 266 Conn. 728, 745, 835 A.2d 940 (2003); see also *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 316 n.24, 819 A.2d 260 (2003) (noting that, in contrast to accidental injury, in which time and place of injury may be pinpointed, "the process of injury from a repetitive trauma is ongoing until [the last date of exposure] . . . and, in many cases . . . the very nature of the injury will make it impossible to demarcate a specific date of injury" [internal quotation marks omitted]).

determination for jurisdictional purposes that requires us to reverse the decision of the board.

The defendants also cite to three bills that were proposed in the legislature after this court decided *Discuillo* in an effort to demonstrate that the legislature "not only agrees that repetitive trauma claims are currently not entitled to take advantage of the three year notice provision supplied for occupational disease claims, but, in failing to pass an amendment to the Workers' Compensation Act has confirmed that repetitive trauma claims must be brought within one year of the injury." We are not persuaded.

First, as we previously have noted in rejecting a similar claim, "we are unaware of any occasion in which this court has relied on a legislative committee's rejection of a proposed bill as evidence of the intent of the General Assembly . . . ." *Ricigliano* v. *Ideal Forging Corp.*, 280 Conn. 723, 741–42, 912 A.2d 462 (2006). Second, we understand the legislature's inaction in this area in the thirteen years since our holding in *Discuillo*, as indicating that the legislature concurred with our holding in that case which, as we have explained previously herein, requires the commissioner to make a determination as to whether the plaintiff's injury more closely resembles an accidental injury or an occupational disease. See, e.g., *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 582, 986 A.2d 1023 (2010) ("[a]lthough legislative silence is not always indicative of legislative affirmation, we have routinely considered legislative inaction for a significant period of time to be significant").

The decision of the compensation review board is reversed and the case is remanded to the board with direction to reverse the commissioner's decision, and to remand the case to a new commissioner to determine whether, in accordance with *Discuillo*, the plaintiff's

injury more closely resembles an accidental injury or an occupational disease for purposes of determining the applicable filing period.[9]

In this opinion the other justices concurred.

---

[9] We note that, in the present case, the commissioner concluded that the plaintiff had failed to show that his injury was "unique" to Sheetrock installers, which is inconsistent with our analysis in *Discuillo* as to what a claimant must prove to establish an occupational disease. At the new hearing that will be held following remand by the board, we trust that the commissioner will follow *Discuillo*, as well as our more recent decision in *Estate of Doe* v. *Dept. of Correction*, supra, 268 Conn. 753, if it becomes necessary to determine whether the plaintiff proved that he suffers from an occupational disease.