COMMISSIONER OF PUBLIC SAFETY *v.* FREEDOM OF INFORMATION COMMISSION ET AL. (AC 32246)

Bear, Bishop and Lavery, Js.

Argued November 14, 2011—officially released August 7, 2012

*Victor R. Perpetua*, appellate attorney, with whom, on the brief, was *Lisa Fein Siegel*, commission counsel, for the appellant (named defendant).

*Stephen R. Sarnoski*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Terrence O'Neill*, assistant attorney general, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendant freedom of information commission (commission)[1] appeals from the judgment of the trial court sustaining the appeal of the plaintiff, the commissioner of public safety, from the decision of the commission. The court concluded that the commission erroneously had required the department of

---

[1] Although the New Haven Register and Michelle Tuccitto Sullo, a reporter, were defendants at trial, they have not appealed.

public safety (department) to release documents to the complainants, Michelle Tuccitto Sullo, a reporter for the New Haven Register, and the New Haven Register (complainants). On appeal, the commission claims that the court erred by (1) concluding that the text of General Statutes § 1-215 does not plainly and unambiguously require disclosure of certain information at the time of the arrest; and (2) failing to defer to the commission's construction of General Statutes §§ 1-215 and 1-210 (b) (3), and thereby failing to follow the applicable scope of judicial review in an administrative appeal. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the commission's appeal. On March 18, 2008, the complainants requested, pursuant to the Freedom of Information Act (act); General Statutes § 1-200 et seq.; that the department provide them with access to the police report of an incident that occurred on March 15, 2008, in Derby. The request concerned the arrest of an individual who allegedly was charged with assault in the first degree of an elderly person and attempt to commit murder. On April 29, 2008, the department responded by letter indicating that the entire report was exempt from disclosure pursuant to § 1-215; however, the department provided the complainants with a copy of the official department of public safety press release pertaining to the incident that was the subject of their inquiry. The press release contained the following information: the accused's name was Toai T. Nguyen, he lived at 59 Grove Street, Shelton, and was born on March 4, 1973; the date, time and location of the incident was March 15, 2008, at 1:01 p.m. on Route 8, northbound, exit seventeen off ramp in Derby; and the charges upon which the accused had been arrested were: assault in the first degree of an elderly person in violation of General Statutes § 53a-59a, attempt to commit murder in violation of General

Statutes §§ 53a-49 and 53a-54a, and failure to respond/ plea in violation of General Statutes § 51-164r (a). The press release also contained a two paragraph narrative that included additional information about the arrest.

On May 2, 2008, the complainants appealed from the decision of the department to the commission pursuant to General Statutes § 1-206 (b) (1). On March 6, 2009, following a hearing, a decision by a hearing officer, and a proceeding before the full commission, the commission issued a final decision. In that decision, the commission concluded, among other things, that § 1-215 "does not exempt records from public disclosure under the [act], but rather mandates that, at a minimum, certain arrest records must be disclosed. In instances where a public agency seeks to withhold other records not mandated to be disclosed pursuant to § 1-215 . . . such public agency must prove that an exemption applies to such other records." The commission also found "that the [department] did make available to the [complainants] a press release concerning the arrest of [Nguyen], which included the name and address of [Nguyen], the date, time and place of his arrest and the offense for which he was arrested." The commission then concluded "that the [department] provided the 'record of arrest' within the meaning of § 1-215 . . . ."

The commission issued the following orders: "Forthwith the [department] shall provide to the [complainants] copies of the in camera records other than the portions described in paragraphs 16, 25, 38 and 39 of the findings, above. . . . Consistent with [the commission's] precedent, the [department] may redact social security numbers from the records ordered released."

On March 12, 2009, the department filed an appeal with the trial court. On March 12, 2010, the commission informed the court that the criminal defendant had entered a guilty plea and the criminal matter therefore

had concluded. The department then made all relevant documents available to the complainants. The court issued its memorandum of decision on April 21, 2010. The court agreed with both parties that the issue of the availability of the exception to the act provided by § 1-215 was moot, but because it was capable of repetition, yet evading review, the case could still go forward. The court also concluded that there was more than one reasonable interpretation of § 1-215, and therefore it consulted legislative history. The court stated that its conclusion from reviewing the legislative history "agrees with the [department's] position—that while *Gifford* [v. *Freedom of Information Commission*, 227 Conn. 641, 631 A.2d 252 (1993)] had restricted disclosure to mere nominal information, the legislative revision had compromised on increasing the mandatory disclosure by police departments of arrest information by requiring the police department to disclose at least *one* of the four items listed in § 1-215 (b) (2). Thus, [the department] here satisfied the act by choosing to provide the complainants with the news release, and was not obligated to make either a full or redacted police report available." (Emphasis in original.) This appeal followed.

"We begin by setting forth our well established standard of review of agency decisions. Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has

not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *Planning & Zoning Commission* v. *Freedom of Information Commission*, 130 Conn. App. 448, 455, 23 A.3d 786 (2011).

I

First, the commission claims that the court erred in concluding that the text of § 1-215 does not plainly and unambiguously require disclosure of the "record of arrest," as that phrase is defined by statute, while leaving all other arrest documents governed by § 1-210 (b) (3).[2] The commission asserts that as a basis, all police records must be made public under the act, subject to certain exemptions. Therefore, it argues, § 1-215 affirmatively requires disclosure of the record of arrest. The commission contends that § 1-215 leaves all other records subject to the provisions of § 1-210 (b) (3) by its express terms.

The department responds by arguing that the plain language of § 1-215 supports its decision to publicly

[2] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (3) Records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of informants not otherwise known or the identity of witnesses not otherwise known whose safety would be endangered or who would be subject to threat or intimidation if their identity was made known, (B) signed statements of witnesses, (C) information to be used in a prospective law enforcement action if prejudicial to such action, (D) investigatory techniques not otherwise known to the general public, (E) arrest records of a juvenile, which shall also include any investigatory files, concerning the arrest of such juvenile, compiled for law enforcement purposes, (F) the name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, or injury or risk of injury, or impairing of morals under section 53-21, or of an attempt thereof, or (G) uncorroborated allegations subject to destruction pursuant to section 1-216 . . . ."

disclose only a news release containing the police blotter information[3] and certain additional information in response to the complainants' request. The department essentially argues that the reference in § 1-215 (a) to § 1-210 (b) (3) is simply to clarify that the exemption applies. In other words, it is there to clarify that § 1-215 does not supersede the exemptions contained in § 1-210 (b) (3). Therefore, the department contends, § 1-215 is satisfied by making available to the public a single news release containing the police blotter information, as defined by the statute, and "some additional information beyond the 'record of the arrest,' consistent with that normally found in arrest reports, incident reports, news releases or other similar reports . . . ."

Resolution of this issue requires statutory interpretation. The following well settled "principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive

---

[3] See footnote 7 of this opinion.

guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 720–21, 6 A.3d 763 (2010).

"[P]ursuant to § 1-2z, [the court is] to go through the following initial steps: first, consider the language of the statute at issue, including its relationship to other statutes, as applied to the facts of the case; second, if after the completion of step one, [the court] conclude[s] that, as so applied, there is but one likely or plausible meaning of the statutory language, [the court] stop[s] there; but third, if after the completion of step one, [the court] conclude[s] that, as applied to the facts of the case, there is more than one likely or plausible meaning of the statute, [the court] may consult other sources, beyond the statutory language, to ascertain the meaning of the statute.

"It is useful to remind ourselves of what, in this context, we mean when we say that a statutory text has a plain meaning, or, what is the same, a plain and unambiguous meaning. [Our Supreme Court] has already defined that phrase. By that phrase we mean the meaning that is so strongly indicated or suggested by the language as applied to the facts of the case, without consideration, however, of its purpose or the other, extratextual sources of meaning . . . that, when the language is read as so applied, it appears to be *the* meaning and appears to preclude any other likely meaning. . . . Put another way, if the text of the statute at issue, considering its relationship to other statutes, would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous." (Emphasis in original; internal quotation marks

omitted.) *State* v. *Kalman*, 93 Conn. App. 129, 133–34, 887 A.2d 950, cert. denied, 277 Conn. 915, 895 A.2d 791 (2006).

"[W]e recognize, as a general matter, that there is an overarching policy underlying the [act] favoring the disclosure of public records. . . . Our construction of the [act] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed. . . . This rule of construction, however, is not determinative. Indeed, although the act was intended as a general matter to promote openness in government . . . the act itself recognizes competing interests, and the need for some governmental records to remain confidential, at least initially. . . .

"[A]lthough the act's general policy favoring public access to public records has strong constitutional underpinnings, the fact that the act implicates first amendment concerns of access to information does not control the interpretation of the act itself. . . . Thus, the question of whether the legislature intended to compel disclosure of arrest reports during the pendency of a criminal prosecution presents an issue of statutory interpretation and, therefore, is a question of law. . . .

"Moreover, [i]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . [If] there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail; and if both cannot apply, the particular provision will be treated as an exception to the general provision." (Citations omitted; internal quotation marks omitted.)

*Gifford* v. *Freedom of Information Commission,* supra, 227 Conn. 651–53.

Pursuant to § 1-2z, we begin with the text of the statute and its relationship to other statutes. Section 1-215 (a) provides in relevant part: "Notwithstanding any provision of the general statutes to the contrary, and except as otherwise provided in this section, any record of the arrest of any person . . . shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-212[4] and subsection (a) of section 1-210,[5] except that disclosure of data or information other than that set forth in subdivision (1) of subsection (b) of this section shall be subject to the provisions of subdivision (3) of subsection (b) of section 1-210. . . ."[6] Subsection (b) provides: "For the purposes of this section, 'record of the arrest' means (1) the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested, and (2) at least one

[4] General Statutes § 1-212 provides for the copying and scanning of public records and the accompanying fees.

[5] General Statutes § 1-210 (a) provides: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. Any agency rule or regulation, or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the Secretary of the State, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein."

[6] See footnote 2 of this opinion.

of the following, designated by the law enforcement agency: The arrest report, incident report, news release or other similar report of the arrest of a person."[7] General Statutes § 1-215 (b).

Our interpretation of the statute also is informed by our Supreme Court's decision in *Gifford* v. *Freedom of Information Commission*, supra, 227 Conn. 653–66. In *Gifford*, the court interpreted General Statutes § 1-20b,[8] now § 1-215, to not require the disclosure of police reports prepared in connection with an arrest to be disclosed to the public while the related criminal prosecution is pending. Id., 651. In 1994, after the *Gifford* decision, the legislature, by virtue of Public Acts 1994, No. 94-246, § 13 (P.A. 94-246), amended § 1-20b, now § 1-215, effectively overruling parts of the court's holding. Ordinarily, "[w]hen the legislature amends the language of a statute, it is presumed that it intended to change the meaning of the statute and to accomplish some purpose." (Internal quotation marks omitted.) *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 693, 894 A.2d 919 (2006). However, in this instance, the legislature left much of the statute intact, did not delete any of its text and only added text to the statute. "[W]hen changes have been introduced by amendment to a statute, the presumed change does not go any

[7] The information listed in § 1-215 (b) (1)—"the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested"—is sometimes referred to as "police blotter" information. See *Gifford* v. *Freedom of Information Commission*, supra, 227 Conn. 660–61.

[8] General Statutes (Rev. to 1993) § 1-20b provides: "Notwithstanding any provision of the general statutes to the contrary, any record of the arrest of any person, other than a juvenile, except a record erased pursuant to chapter 961a, shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-15 and subsection (a) of section 1-19. For purposes of this section, 'record of arrest' means the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested." Section 1-20b was amended and, in 1999, was transferred to § 1-215.

further than that which is expressly declared or necessarily implied. . . . We cannot impute to the legislature . . . in the absence of an intent clearly expressed in the act, [an intent] to enact [a statute] which involves a departure from existing statutory law." (Internal quotation marks omitted.) *Gaida* v. *Planning & Zoning Commission*, 108 Conn. App. 19, 25, 947 A.2d 361, cert. denied, 289 Conn. 922, 923, 958 A.2d 150, 151 (2008). We also note that the *Gifford* court engaged in statutory interpretation to reach its conclusion. Connecticut courts have afforded a "special force" of stare decisis to precedents involving statutory interpretation. "The United States Supreme Court has determined that the standard for stare decisis for precedents involving statutory construction is more stringent because the power of the legislative branch is implicated. See *California* v. *Federal Energy Regulatory Commission*, 495 U.S. 490, 499, 110 S. Ct. 2024, 109 L. Ed. 2d 474 (1990) ('[c]onsiderations of stare decisis have special force in the area of statutory [interpretation], for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done') . . . ." (Citations omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 685 n.3, 680 A.2d 242 (1996).

In *Gifford*, the court made several conclusions of law relevant to our discussion here. First, the court concluded that the first sentence of § 1-20b, which is the same first sentence of § 1-215, by its plain language, establishes a broad disclosure requirement and includes an arrest report. Id., 655. Second, the court concluded that the second sentence of the statute limits the language of the first sentence "by limiting the 'record of the arrest of any person'—which [the court interpreted] to include an arrest report—to the 'name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was

arrested.' " Id., 658. Third, and most important to our discussion, the court determined that, in light of its linguistic analysis of both sentences, § 1-20b, now § 1-215, "exclusively regulates the disclosure of arrest reports, and obligates a police department to disclose such a report only to the extent provided by the second sentence of that provision." Id., 658–59. The *Gifford* court therefore interpreted the statute to mean that law enforcement agencies are only required to disclose during a pending criminal prosecution the specific information listed in the second sentence of that provision, which, at the time, was just the police blotter information. We conclude that much of the *Gifford*[9] decision—including its conclusion that § 1-20b, now § 1-215, exclusively regulates the disclosure of records of law enforcement agencies—is still binding on us.

The 1994 amendment made two substantive changes to the statute.[10] The commission argues that the first

[9] Although *Gifford* v. *Freedom of Information Commission*, supra, 227 Conn. 659–61, was based in part on the legislative history behind § 1-20b, it was decided before the enactment of § 1-2z. We note that our Supreme Court consistently has held that § 1-2z was not meant to overrule every other case in which our courts, prior to the passage of § 1-2z, had interpreted a statute in a manner inconsistent with the plain meaning rule, as that rule is articulated in § 1-2z. See *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 548 n.5, 46 A.3d 112 (2012); *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007), superseded by statute on other grounds by Public Acts 2009, No. 09-178, § 1; see also *Veilleux* v. *Complete Interior Systems, Inc.*, 296 Conn. 463, 473 n.7, 994 A.2d 1279 (2010); *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 430–31, 994 A.2d 1265 (2010).

[10] Public Act 94-246 changed § 1-20b, now § 1-215, in the following ways. It divided § 1-20b into subsections; amended subsection (a) to add an exception that disclosure of data or information other than that set forth in subsection (b) (1) is subject to General Statutes § 1-19 (b) (3), now § 1-210 (b) (3); and added subsection (b) (2) to require the law enforcement agency to make public at least one of the following: an arrest report, incident report, news release, or other similar report of the arrest of a person.

Public Acts 94-246, § 13, amended General Statutes § 1-20b as follows: "Section 1-20b of the general statutes is repealed and the following is substituted in lieu thereof:

"*(a)* Notwithstanding any provision of the general statutes to the contrary, any record of the arrest of any person, other than a juvenile, except a record

change is the most significant. The first substantive change is the addition of the following provision to the statute: "except that disclosure of data or information other than that set forth in subdivision (1) of subsection (b) of this section shall be subject to the provisions of subdivision (3) of subsection (b) of section 1-19." The commission argues that the addition of this provision is significant because it plainly states that the police blotter information is governed by § 1-215 and all other arrest records are governed by § 1-210 (b) (3). We do not agree. It is clear from our reading of this statute that the record of arrest is subject to the disclosure exemption provided in § 1-210 (b) (3) with the exception of the information set forth in § 1-215 (b) (1). The information set forth in § 1-215 (b) (1) is: "[T]he name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested . . . ." In other words, the police blotter information must be made publicly available at the time of the arrest and may not be redacted under § 1-210 (b) (3). However, the additional information, required by § 1-215 (b) (2), may be exempted or redacted in accordance with § 1-210 (b) (3).

The second alteration to the statute was the addition of § 1-215 (b) (2). Section 1-215 (b) (2) adds the requirement that in addition to providing the name and address

erased pursuant to chapter 961a, shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-15 and subsection (a) of section 1-19, EXCEPT THAT DISCLOSURE OF DATA OR INFORMATION OTHER THAN THAT SET FORTH IN SUBDIVISION (1) OF SUBSECTION (B) OF THIS SECTION SHALL BE SUBJECT TO THE PROVISIONS OF SUBDIVISION (3) OF SUBSECTION (B) OF SECTION 1-19, AS AMENDED BY SECTION 14 OF THIS ACT.

"*(b)* For the purposes of this section, 'record of the arrest' means *(1)* the name and address of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested, AND (2) AT LEAST ONE OF THE FOLLOWING, DESIGNATED BY THE LAW ENFORCEMENT AGENCY: THE ARREST REPORT, INCIDENT REPORT, NEWS RELEASE OR OTHER SIMILAR REPORT OF THE ARREST OF A PERSON." (Emphasis in original.)

of the person arrested, the date, time and place of the arrest and the offense for which the person was arrested, the law enforcement agency must also make either the arrest report, incident report, news release or other similar report of the arrest of a person available to the public. Importantly, P.A. 94-246 did not delete any of the text of § 1-215 (b); it only added text, including this subdivision. Therefore, we can determine that the legislature only wanted to alter the *Gifford* court's ruling insofar as to how much information the law enforcement agency must disclose. In other words, we conclude that the 1994 amendment to § 1-215 only added the requirement to disclose a single additional document, to be designated by the law enforcement agency. Although the 1994 amendment clearly overrules the *Gifford* court's holding that all § 1-20b required was the disclosure of the police blotter information, we conclude that the *Gifford* court's reasoning that § 1-20b, now § 1-215, exclusively regulates the disclosure of records of law enforcement agencies was not made void by the legislative amendment. We so conclude because we do not find in the amended statute an expressly declared intent by the legislature to do so. See *Gaida* v. *Planning & Zoning Commission*, supra, 108 Conn. App. 25. Accordingly, we do not accept the commission's argument.

In this case, during the pendency of the criminal prosecution,[11] the department made available to the complainants a single document that it labeled as a press release. As noted previously, the press release included the following information: the accused's name was Toai T. Nguyen, he lived at 59 Grove Street, Shelton, and was born on March 4, 1973; the date, time and location of the incident was March 15, 2008, at 1:01

---

[11] We note here that after the criminal prosecution had concluded, the department provided the complainants with all of the information they had requested.

p.m. on Route 8, northbound, exit seventeen off ramp in Derby; and the charges upon which the accused had been arrested were: assault in the first degree of an elderly person in violation of § 53a-59a, attempt to commit murder in violation of §§ 53a-49 and 53a-54a, and failure to respond/plea in violation of § 51-164r (a). Therefore, the press release satisfied the requirements of § 1-215 (b) (1). The press release also contained a two paragraph narrative that included additional information about the arrest.[12] We conclude that the additional information contained in the two paragraphs satisfied the requirements of § 1-215 (b) (2); specifically, the additional information contained in the two paragraphs constituted a news release. In other words, the department disclosed all the information that it was obligated to disclose under the act.

After carefully considering the language of § 1-215 and its relationship to other statutes, we conclude that, as applied to the facts of this case, there is only one plausible meaning of the statutory language. Therefore, we conclude that the statute's language is plain and unambiguous.[13] Accordingly, we do not need to proceed

[12] The two paragraphs provide: "The accused was traveling with the victim northbound on Rt. 8 in the area of exit 17 in the town of Derby when he began to assault him with a metal object. The accused expressed his desire and intention of killing the victim and subsequently caused a serious, life-threatening injury to him. The victim was transported to an area hospital where he was treated for these injuries.

"The accused was taken into custody at the scene and transported to Troop I in Bethany for processing. He is being charged with [assault in the first degree of an elderly person, attempt to commit murder, and failure to respond/plea]. He was held on a $100,000 bond relating to the assault incident and a court set $103 bond relating to the active warrant on file through the Shelton [p]olice [d]epartment."

[13] We agree with the commission that the court erred in concluding that the statute was ambiguous. "Nonetheless, we may uphold the court's judgment because it reached the right result, even if it did so for the wrong reason." (Internal quotation marks omitted.) *Weigold* v. *Patel*, 81 Conn. App. 347, 353 n.5, 840 A.2d 19, cert. denied, 268 Conn. 918, 847 A.2d 314 (2004); see also *Kalas* v. *Cook*, 70 Conn. App. 477, 485, 800 A.2d 553 (2002).

to the next step. Because we have concluded that the plain language of the statute requires only the disclosure of the police blotter information of § 1-215 (b) (1) and an additional piece of information contained in § 1-215 (b) (2), we also must conclude that the court did not err in its conclusion that the news release disclosed by the department met the requirements of the statute.

II

The commission next claims that the court erred by failing to defer to its construction of §§ 1-215 and 1-210 (b) (3), and that therefore, the court failed to follow the applicable scope of judicial review in an administrative appeal. The commission relies on our Supreme Court's decision in *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 163–64, 931 A.2d 890 (2007). We are not persuaded. "[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . Consequently, an agency's interpretation of a statute is accorded deference when the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable." (Citations omitted; internal quotation marks omitted.) Id.

Because we have concluded that we are still bound by several conclusions of law made by our Supreme

Court in its decision in *Gifford,* we need not reach the merits of this issue. "[I]t is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent. See, e.g., *Jolly, Inc.* v. *Zoning Board of Appeals,* 237 Conn. 184, 195, 676 A.2d 831 (1996) ('[i]t is axiomatic that a trial court is bound by Supreme Court precedent'); *Martin* v. *Plainville,* 40 Conn. App. 179, 182, 669 A.2d 1241 (1996) (Appellate Court, as intermediate court, is prevented from 'reexamining or reevaluating Supreme Court precedent'), aff'd, 240 Conn. 105, 689 A.2d 1125 (1997); *Lash* v. *Aetna Casualty & Surety Co.,* 36 Conn. App. 623, 624, 652 A.2d 526 (1995) (Appellate Court is 'bound by Supreme Court precedent'), aff'd, 236 Conn. 318, 673 A.2d 84 (1996)." *Stuart* v. *Stuart,* 297 Conn. 26, 45–46, 996 A.2d 259 (2010). Accordingly, it is inconsequential to our analysis whether the commission's interpretation of the statute has been time tested.

The judgment is affirmed.

In this opinion the other judges concurred.