******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL J. LAGUEUX *v.* THOMAS B. LEONARDI,
INSURANCE COMMISSIONER
(AC 35257)

Gruendel, Lavine and Bishop, Js.

*Argued October 30, 2013—officially released February 18, 2014*

(Appeal from Superior Court, judicial district of New
Britain, Cohn, J.)

*Michael J. Lagueux*, self-represented, the appellant-
cross appellee (plaintiff), filed a brief.

*Patrick T. Ring*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney gen-
eral, for the appellee-cross appellant (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Michael J. Lagueux, appeals from the judgment of the Superior Court sustaining in part and remanding in part his administrative appeal of the denial of his application for an insurance producer license by the defendant, Thomas B. Leonardi, Insurance Commissioner for the state of Connecticut (commissioner). The main issue in this case is the applicability of certain statutes, one of which generally concerns applications for various insurance licenses, General Statutes § 38a-769, and the others, General Statutes §§ 38a-702a through 38a-702k,[1] which specifically detail the qualifications and requirements for an insurance producer license. This case also concerns whether the commissioner is given discretion beyond § 38a-702a et seq. to deny an application for an insurance producer license. On appeal, the plaintiff claims that although the court correctly concluded that § 38a-769 does not apply to insurance producer licenses, the court erred in not holding that the plaintiff was entitled to such a license under General Statutes § 38a-702f. He also claims that the court improperly concluded that the commissioner has discretion to deny applicants an insurance producer license on the grounds set forth in General Statutes §§ 46a-80 and 46a-81. The commissioner cross appeals, claiming that the court erred in concluding that § 38a-769 (c) and (d) do not apply to individuals applying for an insurance producer license. We affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to our review of the plaintiff's appeal.[2] The plaintiff applied for a Connecticut resident insurance producer license through the Department of Insurance (department) on June 30, 2011. The plaintiff, as required by General Statutes § 38a-702e, recounted the facts surrounding certain previous criminal convictions in his application. These convictions included four counts of harassment in the second degree in 1996; another two counts of harassment in the second degree in 1996; criminal trespass in the second degree in 1998; and one count of harassment in the second degree in 1999. The plaintiff also disclosed a probation violation from 1999. In his application, he explained: "On [June 3, 1999], I was convicted for violation of Connecticut General Statute [§] 53a-32 . . . . I paid the psychiatrist $240 per session twice a month and lost days of work to show up [to] be lectured about how repeat offenders like me who spent time in prison had to be rehabilitated so as not to relapse into criminal acts of aggression against society once again. I never explained to my boss at work why I didn't show up because I hated working in construction anyways. It was nothing but a bunch of drunks and druggies and I neither drank nor did drugs and it felt like I only went to work to pay taxes, union dues, gas, and the shrink who would rather bust

my balls because I wrote these completely pathetic letters to women who would rather send me to prison than to go out on a date with me or give me the time of day to let me know that they already had a boyfriend, a husband, or were just flat out not interested in my completely neurotic ass. I lost my job and I went to my last appointment and told the shrink in confidence that my $240 paid to him would be better spent hiring a whore to get me laid and that his services were no longer needed as far as I was concerned. I refused to set up another appointment with him and I didn't show up to my probation officer's appointment until after work at my new job was complete. . . ."

After reviewing the plaintiff's application, the department denied his request for an insurance producer license. The department's letter stated in relevant part that "[b]ecause the [d]epartment is charged with protecting the public interest, under sections 38a-702k, 38a-774 and 38a-769 of the Connecticut General Statutes, we are denying your request for a [p]roducer's license." Amy Stegall, program manager for the fraud and investigations unit, testified before the hearing officer about the department's decision. She stated that insurance producer licensees are frequently in contact with members of the public in their businesses and homes, have access to consumers' personal information, and are subject to stress in their sales roles when policies are not sold. She further testified that the nature of the plaintiff's offenses and the language used in the letter accompanying his application "caused concern because of [his] hostile tone, [the fact that he] did not comply with court ordered actions and willingly violated his probation." The department thus denied the plaintiff's application.

The plaintiff appealed the department's decision. A hearing was conducted and the hearing officer, Mark R. Franklin, affirmed the decision of the department. He found that § 38a-769 (c) and (d) continued to apply to insurance producers despite the enactment of No. 01-113 of the 2001 Public Acts (P.A. 01-113), in which the legislature adopted § 38a-702a et seq., a statute addressing applications and licensing requirements specifically for insurance producers, and amended § 38a-769. He supported his conclusion by stating that other statutes still referenced "insurance producer[s] licensed under [§] 38a-769." The hearing officer then concluded that the record supported the department's decision to deny the plaintiff an insurance producer license. The plaintiff filed a request for reconsideration, which was denied by the commissioner. The plaintiff then appealed to the Superior Court.

The court reversed and remanded the plaintiff's appeal to the department, finding that the commissioner committed an error of law by applying § 38a-769 (c) and (d) to the plaintiff's application for an insurance

producer license. The court stated that § 38a-769 was inconsistent with § 38a-702a et seq., as the latter statutes addressed the licensing requirements specific to insurance producers. In addition, it stated that the references in other statutes to "insurance producers licensed under [§] 38a-769" were written before the enactment of P.A. 01-113 and its revision of § 38a-769. As a result, the court found that the language in § 38a-769 (c) and (d) no longer applied to insurance producers. It further held that §§ 46a-80 and 46a-81 were the only statutes that could be read together with § 38a-702a et seq. to give discretion to the commissioner to deny an applicant an insurance producer license. This appeal and cross appeal followed.

Resolution of this appeal entails interpretation of the aforementioned statutory provisions. "The following well settled principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common-law principles governing the same general subject matter . . . .

"[P]ursuant to § 1-2z, [the court is] to go through the following initial steps: first, consider the language of the statute at issue, including its relationship to other statutes, as applied to the facts of the case; second, if after the completion of step one, [the court] conclude[s] that, as so applied, there is but one likely or plausible meaning of the statutory language, [the court] stop[s] there; but third, if after the completion of step one, [the court] conclude[s] that, as applied to the facts of the case, there is more than one likely or plausible meaning of the statute, [the court] may consult other sources, beyond the statutory language, to ascertain the meaning of the statute.

"It is useful to remind ourselves of what, in this context, we mean when we say that a statutory text has a plain meaning, or, what is the same, a plain and unambiguous meaning. [Our Supreme Court] has already defined that phrase. By that phrase we mean the meaning that is so strongly indicated or suggested by the language as applied to the facts of the case, without consideration, however, of its purpose or the other, extratextual sources of meaning . . . that, when the language is read as so applied, it appears to be *the* meaning and appears to preclude any other likely meaning. . . . Put another way, if the text of the statute at issue, considering its relationship to other statutes, would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 137 Conn. App. 307, 313–14, 48 A.3d 694, cert. granted in part on other grounds, 307 Conn. 918–19, 54 A.3d 562 (2012).

I

The plaintiff claims that since the enactment of P.A. 01-113 in 2002, § 38a-769 has been superseded and is obsolete with regard to insurance producers. More specifically, he argues that the legislature explicitly excluded insurance producers from § 38a-769 (a), thus rendering its other subsections entirely inapplicable to insurance producers. The commissioner cross appeals, claiming that despite the enactment of P.A. 01-113, § 38a-769 (c) and (d) still apply to applicants for an insurance producer license. He argues that the legislature excluded insurance producers only from subsection (a) of § 38a-769 and not its other subsections. Therefore, the commissioner concludes that the legislature intended insurance producers to be subject to these other subsections, or else it would have specifically excluded them from each provision, as it did in subsection (a). We agree with the plaintiff.

In a case of statutory interpretation, we are guided by the presumption "that the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *State* v. *Courchesne*, 296 Conn. 622, 709, 998 A.2d 1 (2010). We also presume that the legislature does "not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) Id., 710. "Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 404, 999 A.2d 682 (2010). "[C]ommon sense must be used and courts must assume that a reasonable and rational result was intended . . . and,

further, if there are two [asserted] interpretations of a statute, we will adopt the . . . reasonable construction over [the] one that is unreasonable." (Citation omitted; internal quotation marks omitted.) *State* v. *Courchesne*, supra, 710.

It is also "a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . [If] there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail; and if both cannot apply, the particular provision will be treated as an exception to the general provision." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, supra, 137 Conn. App. 315. Furthermore, "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or nonaction will have upon any one of them." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003).

Pursuant to § 1-2z, we begin with the text of the statute and its relationship to other statutes. P.A. 01-113 enacted chapter 701a of the General Statutes and revised § 38a-769. Title 38a governs insurance, and part 1 of chapter 701a, entitled "Insurance Producers and Agents," specifically addresses the qualifications and procedures for the licensing of insurance producers. Chapter 702, of which § 38a-769 is a part, generally applies to "Licensing."

The relevant sections of part 1 of chapter 701a are set forth. Section 38a-702e (a), pertaining to applications for a license, provides in relevant part: "A person applying for a resident insurance producer license shall make application to the commissioner on the uniform application . . . . The commissioner shall not approve the application unless the commissioner finds that the individual (1) is at least eighteen years of age; (2) has not committed any act that is a ground for denial, suspension or revocation set forth in section 38a-702k; (3) has completed, where required by the commissioner, a prelicensing course of study for the lines of authority for which the person has applied; (4) has paid the fees set forth in section 38a-11; and (5) has successfully passed the examinations for the lines of authority for which the person has applied."

Section 38a-702f, pertaining to producer licenses, pro-

vides in subsection (a) that "any person who has met the requirements of sections 38a-702d [Examination. Fees.] and 38a-702e shall be issued an insurance producer license. . . ." Section 38a-702k, entitled "Denial, nonrenewal or revocation of producers license. Hearings. Penalties." sets forth the causes for which the "commissioner may place on probation, suspend, revoke or refuse to issue or renew an insurance producer's license . . . ."[3] General Statutes § 38a-702k (a).

Chapter 702 generally addresses licensing. Section 38a-769, in particular, pertains to applications for a license. Prior to the enactment of P.A. 01-113, General Statutes (Rev. to 2001) § 38a-769 (a) required a person or entity desiring to perform certain insurance related tasks to make a written application to the commissioner for a license. Insurance producers were included in those required to make such application. In P.A. 01-113, the legislature amended subsection (a) of § 38a-769 specifically to exclude insurance producers from having to apply for a resident or nonresident license under that provision. See P.A. 01-113, § 20.[4]

A plain reading of § 38a-769 suggests that after the 2002 revisions, insurance producers are no longer subject to its provisions. Subsection (a) identifies the persons or entities that must apply for a resident or nonresident license. Insurance producers are exempt from having to apply for such licenses. The other subsections of § 38a-769 refer to the applicants for a license, most plausibly those applicants listed in subsection (a) who are applying for a resident or nonresident license. Although the commissioner argues that the legislature only excepted insurance producers from subsection (a), it seems illogical and redundant if it had to amend each following subsection to again exclude insurance producers from its provisions. It is more reasonable to presume that the legislature excluded insurance producers from subsection (a), the section that lists the applicants who must apply for a license, leaving the other subsections without revision, intending for them to refer back to subsection (a). For example, subsection (c) states in relevant part, "[e]ach applicant for a license shall furnish satisfactory evidence to the commissioner that the applicant is a person of good moral character and that the applicant is financially responsible. . . ." The most reasonable interpretation is that the applicant referenced in subsection (c) is one of those applicants listed in subsection (a).[5] Since insurance producers are specifically excluded from subsection (a), the logical interpretation is that § 38a-769, in its entirety, is inapplicable to insurance producers.

The most compelling evidence, however, is reading §§ 38a-702a et seq. and 38a-769 in tandem. In 2002, the legislature enacted a specific statute governing all qualifications and licensing requirements for insurance producers, while simultaneously amending the general

statute on licensing explicitly to exclude insurance producers from having to apply for a license under subsection (a). Since P.A. 01-113 both enacted § 38a-702a et seq. and revised § 38a-769, we find it persuasive that the legislature intended § 38a-769 to apply to all persons or entities applying for a license, except those applying for an insurance producer license, who have been excepted from its provisions, and for whom a new statute was created to govern such licensees. Furthermore, we acknowledge that "specific terms covering [a] given subject matter . . . prevail over general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, supra, 137 Conn. App. 315. Thus, since § 38a-702a et seq. was enacted specifically to govern licensing for insurance producers, it controls over the general statute on licensing.

We nevertheless conclude that under the facts of this case, the meaning of the statute is susceptible to more than one plausible interpretation. Subsections (c) and (d) of § 38a-769 only refer to "each applicant for a license." They do not make a specific reference to subsection (a) or even make a general statement such as "each applicant for such a license," which would impliedly refer to those licenses set forth in subsection (a). As a result, it is plausible that subsections (c) and (d) of § 38a-769 apply to all licensing applicants, including those applying for an insurance producer license. Because of this ambiguity, we must consult other sources beyond the statutory language to ascertain the meaning of the statute. See *Commissioner of Public Safety* v. *Freedom of Information Commission*, supra, 137 Conn. App. 314 ("if the text of the statute at issue, considering its relationship to other statutes, would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous" [internal quotation marks omitted]).

In 1999, the federal legislature, in passing the Gramm-Leach-Bliley Act,[6] addressed state flexibility in multistate licensing reforms. See 15 U.S.C. § 6751. In response to this legislation, the National Association of Insurance Commissioners (association) adopted the Producer Licensing Model Act (model act), which governs the qualifications and procedures for the licensing of insurance producers. In 2002, our state legislature mirrored this model act by enacting P.A. 01-113, entitled "An Act Concerning the Licensing of Insurance Producers." The bill analysis of this act published by the Office of Legislative Research of the General Assembly suggests that "[t]he act [concerning the licensing of insurance producers] modifies the commissioner's responsibilities in determining whether an applicant is suitable. It requires her to find that such applicant (1) is at least [eighteen] years of age; (2) has not committed any act that is grounds for denial, suspension, or revoca-

tion; and (3) where required, has completed a pre-licensing course for the lines of authority applied for. Prior law required the commissioner to satisfy herself that each applicant was properly qualified, trustworthy, and that granting a license was in the public interest."[7] Office of Legislative Research, Bill Analysis, P.A. 01-113, Substitute Senate Bill No. 1096, p. 2.

In introducing P.A. 01-113, Senator Thomas A. Bozek commented: "[T]his is a commissioner's bill. It's somewhat technical but it's designed after a model act at the [association] . . . and it rewrites all the provisions of licensing insurer's agents in the State of Connecticut and allows for the provisions for reciprocity in other states and other insurance agencies that deal with the State of Connecticut, insurance agents." 44 S. Proc., Pt. 8, 2001 Sess., p. 2194. Representative Michael J. Jarjura similarly stated, "[t]his legislation . . . is in response to some changes made at the federal level. This proposal would bring Connecticut into compliance with the federal provisions passed by the Gramm-Leach-Bliley Act. . . . Connecticut being . . . known as the insurance capital of the world, it is hoped that we could lead off and bring the rest of the country into compliance with the modernization of these licensing procedures within the insurance industry." 44 H.R. Proc., Pt. 13, 2001 Sess., p. 4386. Lastly, then Commissioner Susan F. Cogswell testified before the Insurance and Real Estate Committee, stating that: "This proposed legislation modified the licensure requirements for individuals and companies seeking to sell insurance in our state and meets the requirements set out in Gramm-Leach-Bliley. . . . The proposed legislation streamlines the licensing of agents, increases reciprocity with other states, and clarifies the extent and the nature of offenses that would disqualify an individual from obtaining or maintaining a license. We have had the opportunity to . . . prove that states are very capable of modernizing insurance regulation while at the same time protecting the consumers and preserving a high moral and professional standard for individuals who engage in the business of insurance." Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 2, 2001 Sess., p. 248.

That legislative history is persuasive evidence that the legislature was attempting to create one uniform body of law to govern insurance producers. The bill analysis for P.A. 01-113 explicitly states that it was under prior law, referring to § 38a-769, that the commissioner had discretion to deny an applicant a license based on trustworthiness and on the interests of the public. Furthermore, Commissioner Cogswell emphasized that "[P.A. 01-113] modified the licensure requirements for individuals and companies seeking to sell insurance in our state and . . . streamlines the licensing of agents." The language employed by Senator Bozek describes the intent of the legislature when he stated that "[it] *rewrites all the provisions* of licensing

insurer's agents in the State of Connecticut." (Emphasis added.) It would therefore make little sense to allow § 38a-769, a general statute on licensing, to alter the legislative intent of enacting § 38a-702a et seq. After considering the legislative history of § 38a-702a et seq., we are convinced that § 38a-769 no longer applies to insurance producers. The court, therefore, did not err in holding that insurance producers are not subject to the general licensing requirements set forth in § 38a-769.[8]

## II

Despite our affirmance of the court in concluding that § 38a-769 no longer applies to insurance producers, we must still determine whether the court properly found that the commissioner possessed discretion beyond § 38a-702a et seq. to deny the plaintiff an insurance producer license. We agree with the court that the commissioner retained such discretion.[9]

At the outset, we note the guiding principles we must consider on the issue of statutory interpretation. First, "we are required to read statutes together when they relate to the same subject matter . . . ." (Internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 748, 865 A.2d 428 (2005). Second, there is a presumption that the legislature has created a harmonious and consistent body of law when amending or enacting statutes. *State* v. *Courchesne*, supra, 296 Conn. 709. Lastly, "[t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [lack thereof] will have [on] any one of them. And it is always presumed to have intended that effect which its action or [lack thereof] produces." (Internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 398, 978 A.2d 49 (2009).

The plaintiff claims that §§ 46a-80 and 46a-81 are obsolete with regard to insurance producer licenses since the enactment of § 38a-702a et seq. The commissioner, in contrast, argues that General Statutes § 38a-702k does not deprive the commissioner the discretion to deny an applicant an insurance producer license. We agree with the commissioner.

The plaintiff argues that because § 38a-702k enumerates all of the disqualifying conduct the commissioner may consider in denying an applicant an insurance producer license, he has no discretion to deny an applicant a license based on the criteria set forth in § 46a-80. The plaintiff concludes that because the commissioner stipulated that he had met all the requirements set forth in §§ 38a-702d and 38a-702e and was not disqualified under § 38a-702k, the department is required, under the mandatory language in § 38a-702f, to issue the plaintiff an insurance producer license. For three reasons, we do not find this argument persuasive.

First, we note that "[t]he use of the word 'shall,' though significant, does not invariably create a mandatory duty because statutes must be construed as a whole to ascertain the legislative intention."[10] *Tramontano* v. *Dilieto*, 192 Conn. 426, 433–34, 472 A.2d 768 (1984). The plaintiff's reading of the statute would render all other statutes regarding the same subject matter void. And, just as the legislature does not intend to enact meaningless provisions, nor does it intend to enact meaningless statutes. In interpreting statutes, we must presume that no part is superfluous. *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010). In addition, "[t]his court has consistently shown a disposition to look through the literal meaning of words and forms of procedure to the essential purposes to be served." (Internal quotation marks omitted.) *Tramontano* v. *Dilieto*, supra, 433. Despite the use of the word "shall" in § 38a-702k, we are persuaded that the legislature never intended that the commissioner would be limited solely to its enumerated factors. There is no indication that the list contained in § 38a-702k is meant to be exhaustive, and the statute does not specifically state that the list is exclusive.[11]

Second, even if "shall" in this context were construed as a mandatory duty, it does not preclude reading § 38a-702k harmoniously with § 46a-80. We have always noted that, "[i]n cases in which more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 552, 46 A.3d 112 (2012). Chapter 814c entitled "Human Rights and Opportunities" existed in 2002 when the legislature enacted P.A. 01-113. We therefore presume that the legislature was aware of General Statutes §§ 46a-79 through 46a-81 and intended to produce one consistent body of law.

As a statute on human rights, chapter 814c is very broad and encompasses the insurance producer statute within its provisions. This interpretation is supported by the text of § 46a-81 (a), which provides: "Except as provided in section 36a-489, the provisions of sections 46a-79 to 46a-81, inclusive, shall prevail over any other provisions of law which purport to govern the denial of licenses . . . on the grounds of a lack of good moral character, or which purport to govern the suspension or revocation of a license, permit, certificate or registration on the grounds of conviction of a crime." In reading the statutory language, it is clear that §§ 46a-79 through 46a-81 are applicable to all statutes that govern the denial of licenses based on conviction of a crime, and continue to apply absent a specific exception in the statute. Significantly, the legislature did not amend § 46a-81 (a) after enacting P.A. 01-113 specifically to

exclude § 38a-702a et seq. from its provisions.

Third, we are not persuaded that §§ 38a-702a et seq. and 46a-80 are inconsistent, as suggested by the dissent. Subsection (a) of § 46a-80 provides in relevant part that "[e]xcept as provided in subsection (c) of this section . . . a person shall not be disqualified from employment by the state or any of its agencies, nor shall a person be disqualified to practice, pursue or engage in any occupation, trade, vocation, profession or business for which a license, permit, certificate or registration is required to be issued by the state or any of its agencies solely because of a prior conviction of a crime." Subsection (c) of § 46a-80 then states: "A person may be denied employment by the state or any of its agencies, or a person may be denied a license, permit, certificate or registration to pursue, practice or engage in an occupation, trade, vocation, profession or business by reason of the prior conviction of a crime if after considering (1) the nature of the crime and its relationship to the job for which the person has applied; (2) information pertaining to the degree of rehabilitation of the convicted person; and (3) the time elapsed since the conviction or release, the state, or any of its agencies determines that the applicant is not suitable for the position of employment sought or the specific occupation, trade, vocation, profession or business for which the license, permit, certificate or registration is sought." Section 46a-80, addressing a person's prior convictions and whether that person could be disqualified from employment by reason of those prior convictions, is not inconsistent with § 38a-702a et seq. Rather, § 46a-80 is complementary to § 38a-702a et seq., ensuring that a person is treated fairly with regard to a previous criminal conviction. There is nothing in § 38a-702a et seq. to suggest that these provisions are incompatible with § 46a-80, or that such statute cannot be used to provide supplemental discretion to the commissioner.[12] Thus, in accordance with the aforementioned reasons, we conclude that §§ 46a-80 and 38a-702a et seq. reasonably can be harmonized into a consistent body of law.

The most persuasive evidence that the legislature intended §§ 38a-702k and 46a-80 to be read together, however, is that our legislature was emulating federal legislation when it enacted § 38a-702a et seq. In 2001, consistent with the mandate of the Gramm-Leach-Bliley Act, the association set forth a model act for states reforming insurance producer statutes. It also created the State Licensing Handbook (handbook) to ensure that each state was properly regulating insurance producer licenses. Our legislature mirrored the model act when it enacted P.A. 01-113.

Pursuant to § 38a-702e, an applicant is required, through the uniform application, to disclose prior criminal history.[13] More specifically, as noted in the bill analysis, P.A. 01-113 "requires resident or nonresident

individual applicants to use the uniform application authorized by the [association] when applying for a license." Office of Legislative Research, Bill Analysis, P.A. 01-113, Substitute Senate Bill No. 1096, p. 2. The association's uniform application requires an applicant to disclose any prior convictions of a crime. The association specifically notes that " 'Crime' includes a misdemeanor, a felony or a military offense." The handbook further provides that "[w]hen an application contains a disclosure with a 'yes' answer to a criminal history question, in determining whether to issue a license, states should consider the following factors": (1) whether the application is for a resident or nonresident producer license; (2) the severity and nature of the offense; (3) the frequency of the offenses; (4) the date of the offense; (5) the completion of the terms of sentencing; and (6) the evidence of the applicant's rehabilitation.[14] With regard to the second factor, the severity and nature of the offense, the handbook provides: "Felony convictions should always be considered in determining whether to issue a license to an individual . . . . A criminal conviction is only relevant to the licensing decision if the crime is related to the qualifications, functions, or duties of an insurance producer. Examples include theft, burglary, robbery, dishonesty, fraud, breach of trust or breach of fiduciary duties, any conviction arising out of acts performed in the business of insurance, or any actions not consistent with public health, safety, and welfare."

We agree with the Superior Court that the legislature intended the commissioner to be able to consult other disqualifying criteria beyond § 38a-702a et seq. and to use his discretion to grant or deny a license. The association specifically states in its handbook that felony convictions are always relevant and that other criminal convictions are only relevant when the crime is related to the role of an insurance producer. This is persuasive evidence that the commissioner has discretion to deny an insurance producer license based on all disclosed criminal convictions, whether they are misdemeanor or felony convictions. It would be illogical to assume that our legislature, in following federal guidelines, would require a disclosure of all criminal convictions, both felony and misdemeanor, but would then require the commissioner to ignore any disclosed misdemeanor convictions. The handbook states that criminal convictions are relevant when the commissioner is determining whether to issue an insurance producer license. Therefore, we presume that the legislature followed the federal guidelines both in using the association's uniform application and in giving the commissioner the discretion to deny a license based on disclosed criminal convictions. We thus conclude that the commissioner possesses the discretion to refuse an insurance producer license based on the criteria set forth in § 46a-80.

Since we conclude that the commissioner has discre-

tion beyond § 38a-702a et seq. to deny a license, we must determine whether the court properly remanded the case to the department. In the present case, the hearing officer found that the commissioner properly denied the plaintiff's application under both § 38a-769 (c) and (d), together with §§ 46a-80 and 46a-81. The hearing officer did not, however, distinguish the analysis under § 38a-769 (c) and (d) from §§ 46a-80 and 46a-81.[15] Therefore, as the court stated, "the hearing officer never [made] complete factual findings on §§ 46a-80 . . . and 46a-81 . . . [and] conclude[d] the discussion of these sections by raising again § 38a-769." We agree with the court and remand the case to the hearing officer to determine whether the commissioner's decision to deny the plaintiff an insurance producer license was appropriate under §§ 46a-80 and 46a-81.

The judgment is affirmed.

In this opinion, LAVINE, J., concurred.

[1] We refer in this opinion to General Statutes §§ 38a-702a through 38a-702k as § 38a-702a et seq. and refer to individual sections as necessary.

[2] Although the plaintiff alleged in the September 13, 2012 administrative appeal to the Superior Court that he did not agree with some of the hearing officer's factual findings, he does not challenge any of those findings in his appeal to this court.

[3] Specifically, General Statutes § 38a-702k (a) provides that these causes include: "(1) Providing incorrect, misleading, incomplete or materially untrue information in the license application; (2) violating any insurance laws, or violating any regulation, subpoena or order of the commissioner or of another state's commissioner; (3) obtaining or attempting to obtain a license through misrepresentation or fraud; (4) improperly withholding, misappropriating or converting any moneys or properties received in the course of doing an insurance business; (5) intentionally misrepresenting the terms of an actual or proposed insurance contract or application for insurance; (6) having been convicted of a felony; (7) having admitted or been found to have committed any insurance unfair trade practice or fraud; (8) using fraudulent, coercive or dishonest practices, or demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of business in this state or elsewhere; (9) having an insurance producer license, or its equivalent, denied, suspended or revoked in any other state, province, district or territory; (10) forging another's name to an application for insurance or to any document related to an insurance transaction; (11) improperly using notes or any other reference material to complete an examination for an insurance license; (12) knowingly accepting insurance business from an individual who is not licensed; (13) failing to comply with an administrative or court order imposing a child support obligation; or (14) failing to pay state income tax or comply with any administrative or court order directing payment of state income tax."

[4] Subsection (a) of General Statutes § 38a-769 now provides: "Any person, partnership, association or corporation that is resident in this state or has its principal place of business in this state, or a nonresident of this state who is not licensed in any other state, desiring to act within this state as a public adjuster, casualty adjuster, motor vehicle physical damage appraiser, certified insurance consultant, surplus lines broker or desiring to engage in any insurance-related occupation for which a license is deemed necessary by the commissioner, *other than an occupation as an insurance producer*, shall make a written application to the commissioner for a resident license. Any other person, partnership, association or corporation desiring to so act or to engage in any insurance-related occupation for which a license is deemed necessary by the commissioner, *other than an occupation as an insurance producer*, shall make a written application to the commissioner for a nonresident license. . . ." (Emphasis added.)

[5] The applicants referenced in subsection (a) of § 38a-769 include public adjusters, casualty adjusters, motor vehicle physical damage appraisers, certified insurance consultants, surplus lines brokers and anyone desiring to engage in any insurance-related occupation for which a license is deemed

necessary by the commissioner, other than an insurance producer.

[6] Gramm-Leach-Bliley Financial Modernization Act of 1999, Pub. L. No. 106-102, 113 Stat. 1338 (1999).

[7] We note that, although the comments of the Office of Legislative Research are not, in and of themselves, evidence of legislative intent, our Supreme Court has observed that they properly may bear on the legislature's knowledge of interpretive problems that could arise from a bill. See, e.g., *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 124 n.15, 942 A.2d 396 (2008).

[8] The commissioner claims that its application of § 38a-769 (c) and (d) to insurance producers established a time-tested interpretation that cannot be disturbed. However, "[i]t is well established that an administrative agency's decision under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., with respect to the construction of a statute is not entitled to special deference when [as in the present case] that determination has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . Instead, [w]ell settled principles of statutory interpretation govern our review." (Internal quotation marks omitted.) *University of Connecticut* v. *Freedom of Information Commission*, 303 Conn. 724, 733, 36 A.3d 663 (2012). Moreover, "[c]onclusions of law reached by the administrative agency must [only] stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Celentano* v. *Rocque*, 282 Conn. 645, 652, 923 A.2d 709 (2007). We agree with the court that the department has not established a time-tested interpretation. Despite the department's continuous use of § 38a-769 (c) and (d) since the enactment of § 38a-702a et seq., we do not find the interpretation to be reasonable. In addition, we note that no appellate court has ever addressed this issue and therefore the interpretation has not been subject to judicial scrutiny.

[9] We agree with the well written dissent that it is our job to interpret, rather than create, statutory law. We respectfully disagree, however, that we have gone two steps too far. Rather, we strive only to give meaning to the entire statutory scheme as created by the legislature, ensuring that, where possible, the statutes are read harmoniously and consistently.

[10] Although the dissent aptly notes that "we are instructed that when the word 'shall' is juxtaposed with a substantive action verb, it creates a mandatory duty," case law also suggests that if "the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." *Fidelity Trust Co.* v. *BVD Associates*, 196 Conn. 270, 278, 492 A.2d 180 (1985). Section 38a-702k can be read as such. It is designed to give the commissioner discretion in suspending, revoking, or refusing to issue or renew an insurance producer's license. It provides order in such proceedings, giving the commissioner a nonexhaustive list of causes he may use in order to deny such license.

[11] See *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, 267 Conn. 192, 209–10, 837 A.2d 748 (2004) (holding that § 500 of the Plainville Zoning Regulations was not exclusive list of special exceptions where § 500 provided in relevant part that "[t]he following uses are declared to possess such special characteristics that each must be considered as a special exception").

[12] The dissent cites several examples, such as General Statutes § 20-316a, where the legislature has specifically provided that its provisions are "subject to the provisions of section 46a-80." Simply because other statutes have provisions that directly refer to §§ 46a-80 and 46a-81 bears no significance on the present case. There is no requirement that the legislature specifically delineate when statutes must be read harmoniously with another statute. Moreover, suggesting that § 46a-80 only operates when engaged by another statute is contrary to the controlling language in § 46a-80.

[13] General Statutes § 38a-702e (a) provides in relevant part: "A person applying for a resident insurance producer license shall make application to the commissioner on the uniform application and declare under penalty of refusal, suspension or revocation of the license that the statements made in the application are true, correct and complete to the best of the individual's knowledge and belief. . . ."

[14] The factors listed in § 46a-80 (c) are consistent with, and almost identical to, the factors listed in the association's handbook. This is further evidence that the legislature intended § 46a-80 to be read along with § 38a-702a et seq.

[15] The hearing officer stated in his decision: "Because there is an element of criminal conduct in determining whether [the plaintiff's] application is

in the public interest, and whether he is trustworthy and a person of good moral character; it is important to consider the requirements of [§] 46a-80." The hearing officer then recited the relevant language in both §§ 46a-80 and 46a-81, and analyzed whether the commissioner properly denied the plaintiff's application by reviewing the information provided in the plaintiff's application. He discussed the time that elapsed from the plaintiff's last conviction and the relevancy of the offense to the responsibility of an insurance producer. The hearing officer went on to conclude, however, that "§ 38a-769 (c) provides that each applicant for a producer license 'shall furnish satisfactory evidence to the commissioner that the applicant is a person of good moral character and that the applicant is financially responsible,' and [§] 38a-769 (d) indicates that the commissioner may issue a license upon finding that the applicant 'meets the licensing requirements of this title and is in all respects properly qualified and trustworthy and that the granting of such license is not against the public interest.' Thus, there is a relationship between the nature of the crimes and the qualifications of having good moral character, being trustworthy and ensuring that the issuance of a license is in the public interest."