******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JOHN J. PARROTT ET AL. *v.*
AL L. COLON ET AL.
(AC 44178)

Bright, C. J., and Alexander and Bishop, Js.

*Syllabus*

The plaintiff tenants, J and S, sought, inter alia, an order to compel the
defendants to use the money collected from them for rent to make
certain repairs to their leased premises. The plaintiffs, who had entered
into a residential lease agreement with the defendants, filed a complaint
for housing code enforcement, pursuant to the applicable statute (§ 47a-
14h), with the town in which the premises was located, alleging that
the defendants had violated the statute (§ 47a-7) when they failed to
repair and maintain certain conditions at the premises, including, inter
alia, the swimming pool, furnace, and chimneys. The trial court deter-
mined that only the plaintiffs' alleged violations concerning the furnace
and chimneys arguably fell within the statutory criteria. During the
bench trial, W, a town building official, testified that he notified D, a
sanitarian for the local health district that enforces the health code, of
the complaint because the alleged issues were property maintenance
matters to be addressed by the local health district. D attested that after
reviewing the complaint and speaking to J on the phone, she concluded
that the alleged violations did not rise to the level of a health, fitness,
or habitability concern and further determined that the defendants could
not be cited for any code violations as the furnace reached a level of
sixty-five degrees, which was legally sufficient, especially in July, and
the housing code did not require chimneys or fireplaces to be provided
or maintained. In its memorandum of decision, the court determined,
inter alia, that based on the record and the evidence presented, the
plaintiffs failed to prove by a fair preponderance of the evidence that
the violations alleged in the complaint rose to the level of violations
materially affecting the health, safety, and habitability of the premises
and, therefore, rendered judgment in favor of the defendants. Thereafter,
the plaintiffs appealed to this court, arguing that their claims regarding
the swimming pool, furnace, and chimneys did not need to constitute
violations of the housing code or rise to a level affecting the health,
safety, and habitability of the premises to prevail on their complaint
pursuant to § 47a-14h alleging violations of § 47a-7. *Held* that the trial
court's finding that the plaintiffs failed to establish that their allegations
constituted violations of the housing code or materially affected the
health, safety, and habitability of the premises as required under § 47a-
7 was not clearly erroneous: to trigger the sanctions available for a
violation of § 47a-7, the plaintiffs were required to show more than
dissatisfaction with the condition and operation of the pool, furnace,
and chimneys and, instead, were required to adduce evidence that estab-
lished a substantial violation or series of violations of housing and health
codes that created a material risk or hazard to the plaintiffs as occupants;
moreover, the evidence in the record demonstrated that the plaintiffs
failed to establish that any of their allegations constituted a violation
of § 47a-7, as the furnace reached a legally sufficient level of temperature,
the lack of repairs to the pool was not a health, safety, or habitability
issue, especially considering that the parties' signed agreement provided
that the pool was strictly an amenity, of which use was not guaranteed,
and J testified that the plaintiffs did not suffer any injury or illness as
a result of the defendants' alleged failure to clean the chimneys.

Argued December 2, 2021—officially released June 21, 2022

*Procedural History*

Action for housing code enforcement, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Middlesex, Housing Session at Middletown, and
tried to the court, *Woods, J.*; judgment for the defen-

dants, from which the plaintiffs appealed to this court. *Affirmed.*

*Robert J. Hale, Jr.*, for the appellants (plaintiffs).

*David E. Rosenberg*, for the appellees (defendants).

*Opinion*

ALEXANDER, J. In this housing code enforcement action, the plaintiffs, John J. Parrott and Solanyi A. Parrott-Rosario, appeal from the judgment of the trial court, rendered after a bench trial, in favor of the defendants, Al L. Colon, Karen J. Colon (landlord), and Robert C. White & Company, LLC (property manager). The plaintiffs claim that the court incorrectly construed General Statutes § 47a-7 when it required them to prove by a fair preponderance of the evidence that their allegations constituted violations of the housing code or materially affected the health, safety and habitability of the premises. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In July, 2018, the plaintiffs and the landlord, the owner of the premises, entered into a residential lease agreement for a single-family home located at 7 Redberry Lane in Portland (premises). The plaintiffs, as tenants, agreed to lease the premises from the landlord for the period of July 13, 2018, to June 30, 2019, for a rent of $2500 per month. Thereafter, the plaintiffs and the landlord agreed to extend the period of the lease agreement to June 30, 2020. In July, 2019, the plaintiffs filed a complaint form with the town of Portland's Building & Land Use Division, in which they alleged certain issues with the premises that the landlord and the property manager had failed to rectify. In August, 2019, the plaintiffs initiated this action[1] by filing a complaint for housing code enforcement pursuant to General Statutes § 47a-14h in which they alleged that the landlord had violated § 47a-7. In their complaint, the plaintiffs claimed that the defendants failed to repair and/or maintain: (1) the plumbing and filtration system for the swimming pool; (2) the furnace providing heat to the second floor; (3) the trash compactor; (4) the patio lights; (5) the front doorbell; and (6) the chimneys. The plaintiffs sought: (1) an order requiring the defendants to make repairs and/or an order requiring a receiver to collect rents and correct the identified conditions with the money collected for rent; (2) money, which may include reimbursement of the money paid to the court pursuant to § 47a-14h (h);[2] and (3) attorney's fees and expenses pursuant to General Statutes § 42-150bb.[3] As a result of the plaintiffs' complaint and pursuant to § 47a-14h, the plaintiffs began paying their monthly rent to the clerk of the court instead of to the property manager. By the last day of trial, the plaintiffs had paid $10,000 in rent payments to the clerk of the court.

A trial on the plaintiffs' complaint was held on September 9, October 25 and December 13, 2019. At trial, the court heard testimony from John Parrott, Elizabeth Davidson, a sanitarian III for the Chatham Health District for the town of Portland, and Lincoln Bond White,

a building official for the town of Portland.

The court summarized the relevant testimony as follows. "White testified that he received the complaint from [John Parrott] and sent a request for voluntary compliance to the [defendants]. After conferring with the [defendants], White determined that there were no violations of the state building code because the property was not under construction. He testified that, pursuant to the state building code, he was required to investigate complaints of newly constructed or newly installed items. White further testified that, as a building official with the town of Portland, he therefore had no authority to investigate the plaintiffs' complaint and said issues were property maintenance matters to be addressed, instead, by the Chatham Health District. White testified that, upon reaching these conclusions, he notified Davidson, of the housing code enforcement division, of the plaintiffs' complaint. White also testified that, based on his experience, nothing in the complaint rose to [the] level of [a] health, fitness or habitability [concern].

"Davidson testified that, as the official at the Chatham Health District that includes the town of Portland and enforces the Chatham Health Code, she reviewed the plaintiffs' complaint and spoke with [John Parrott] over the phone. She concluded that none of the six violations alleged by the plaintiffs rose to the level of a health, fitness or habitability concern. As a result, Davidson determined that the [defendants] could not be cited for any code violations based on the nature of the plaintiffs' complaint."

The court determined that only the plaintiffs' second and sixth alleged violations, concerning the furnace and the chimneys, arguably fell within the statutory criteria. In analyzing the allegations regarding the second purported violation, that the defendants failed to repair and maintain the furnace on the second floor of the premises, the court noted that John Parrott "testified that the furnace did not heat the second floor of his house sufficiently. In response to this claim, Davidson testified that, on its face, failure to maintain a furnace in the middle of July was not indicative of a health, safety or habitability issue. Davidson also testified that, according to [John Parrott], with whom she had spoken . . . the furnace worked and there was heat being provided to the area in question on the second floor. Davidson testified that the furnace reached a level of sixty-five degrees, which was legally sufficient, particularly in July, when the complaint was made. . . . Davidson ultimately determined that there were no health concerns or health issues raised by the [plaintiffs] regarding the performance of the furnace."

In analyzing the allegations regarding the sixth purported violation, that the defendants failed to have the chimneys cleaned, the court noted that John Parrott

"testified that soot and smoke came down the chimney and into the house during a temperature inversion. In response to this claim, Davidson testified that nothing in the housing code requires chimneys or fireplaces to be provided or maintained. She further testified that cleaning of chimneys does not come under the jurisdiction of the public health code, and, therefore, does not create a health, safety or habitability issue . . . . [John Parrott] further testified that neither he nor anyone else residing in the home suffered any injury, respiratory problems, or required the care of a physician as the result of any problems with the chimneys."

As to each of these claims, the court determined that "none of the plaintiffs' claims are so significant or so substantial that living under said conditions would be detrimental to the safety and welfare of the [plaintiffs]" and found the testimony of the town officials to be "both compelling and persuasive." It concluded that "[b]ased upon the record and the evidence presented at trial . . . the [plaintiffs] failed to prove by a fair preponderance of the evidence that the violations alleged in [the] complaint rise to the level of violations materially affecting the health, safety and habitability of the premises . . . ." The court accordingly rendered judgment for the defendants and ordered that the $27,500 in rent payments that the plaintiffs paid to the clerk of the court be disbursed to the property manager.

On appeal, the plaintiffs contend that their claims regarding the swimming pool, furnace and chimneys[4] need not constitute violations of the housing code or rise to the level of materially affecting the health, safety and habitability of the premises to prevail on their complaint brought pursuant to § 47a-14h alleging violations of § 47a-7. Specifically, the plaintiffs claim that there is nothing "to indicate that the landlord's responsibilities under § 47a-7 are limited to those set forth in the applicable building and housing codes nor that they are limited to those materially affecting health and safety" and that "[a]n action by [an] individual tenant to enforce [a] landlord's responsibilities under . . . § 47a-14h is not the same thing as an action for breach of the lease contract but neither is it incompatible with an action against the landlord for violation of the lease." We disagree.

The issue in this case is whether, pursuant to § 47a-7, the plaintiffs were required to show that the alleged breaches of the lease constituted violations of the housing or building code, or a threat to the health, safety or habitability of the premises. "We are therefore faced with an issue of statutory construction requiring a conclusion of law. When construing a statute, we adhere to fundamental principles of statutory construction . . . over which our review is plenary." (Internal quotation marks omitted.) *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 827, 251 A.3d

56 (2021).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common-law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Lagueux* v. *Leonardi*, 148 Conn. App. 234, 239–40, 85 A.3d 13 (2014).

We next set forth the relevant language of the statutes. Section 47a-14h[5] permits a tenant to institute an action when a landlord has failed to perform his or her legal duties as required by § 47a-7. Section 47a-7 (a) provides: "A landlord shall: (1) Comply with the requirements of chapter 368o and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant, a member of his family or other person on the premises with his consent, in which case such duty shall be the responsibility of the tenant; (3) keep all common areas of the premises in a clean and safe condition; (4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances and elevators, supplied or required to be supplied by him; (5) provide and maintain appropriate receptacles for the removal of ashes, garbage, rubbish and other waste incidental to the occupancy of the dwelling unit and arrange for their removal; and (6) supply running water and reasonable amounts of hot water at all times and reasonable heat except if the building which includes the dwelling unit is not required by law to be equipped for that purpose or if the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the tenant or supplied by a direct public utility connection."

In construing the statute, this court previously has stated that § 47a-7 (a) requires that a landlord maintain his or her leased premises in "a fit and habitable condition." *Visco* v. *Cody*, 16 Conn. App. 444, 451, 547 A.2d 935 (1988). Although this court in *Visco* did not address the specific claim raised by the plaintiffs in the present appeal, we are "bound by our previous judicial interpretations of the language and the purpose of the statute." *Kasica* v. *Columbia*, 309 Conn. 85, 93–94, 70 A.3d 1 (2013). In *Visco*, the defendants, month-to-month tenants living in an apartment owned by the plaintiff, had requested that the plaintiff landlord make various repairs to their apartment. *Visco* v. *Cody*, supra, 445. The requests for repairs began in October, 1986, and were made at various times thereafter. Id. On April 14, 1987, the plaintiff caused a notice to quit to be served on the defendants and when the defendants failed to vacate, the plaintiff initiated a summary process action. Id. In their answer, the defendants raised a special defense in which they asserted that pursuant to General Statutes § 47a-20,[6] the summary process action was commenced within six months of the defendants' request for repairs and, therefore, the action was barred. Id., 446. At trial, the plaintiff testified that at the defendants' request, he "bled the bathroom radiator, tightened the bedroom windows and replaced the sash cords, weatherstripped the front door to eliminate drafts, fixed some loose tiles on the bathroom floor and provided paint to the defendants so that they could repaint the kitchen. On the basis of this evidence, the trial court determined that the protection afforded by . . . § 47a-20 had not been triggered, because the requested repairs did not relate to defects which materially affect health and safety." (Internal quotation marks omitted.) Id.

On appeal, the defendants argued that they need only prove a good faith request for repairs in order to invoke the protection of § 47a-20. Id., 446–47. This court affirmed the judgment of the trial court, explaining that "[i]f we were to adopt the defendants' argument, we would have to acknowledge a greater duty to make repairs as set forth in § 47a-20 than that which is specified in § 47a-7 (a). The latter obliges a landlord to maintain his leased premises in a fit and habitable condition; the former, under the defendants' construction, would also oblige the landlord to make any cosmetic or aesthetic repairs, solely at the tenant's good faith behest. This is not to say that a tenant does not have the right to request aesthetic repairs; rather, the tenant cannot avoid eviction, using § 47a-20 as a shield, on the grounds that he requested such repairs in good faith." Id., 451. This court further explained that the repair at issue was not required to be of a substantial code violation. Id., 453. "An adequate and fair balancing of the rights involved may be achieved by requiring the requested repair to be one necessary to put and keep the premises

in a fit and habitable condition." (Internal quotation marks omitted.) Id. Additionally, this court stated that "the sanctions in these sections are not triggered until and unless evidence is adduced at trial establishing that there is a substantial violation or series of violations of housing and health codes creating a material risk or hazard to the occupant." (Internal quotation marks omitted.) Id., 450–51.

In the present case, the plaintiffs contend that their complaint specifically alleged violations of § 47a-7 (a) (4) and that this section does not require them to "prove a violation of the applicable building and housing codes or a condition materially affecting health and safety . . . ." The relevant subsection provides that a landlord shall "maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances and elevators, supplied or required to be supplied by him . . . ." General Statutes § 47a-7 (a) (4). This subsection plainly states that the landlord's duty is to "maintain [the premises] in good and safe working order and condition . . . ." Such a standard clearly requires the plaintiffs to show more than their dissatisfaction with the condition and operation of the swimming pool, furnace and chimneys. Furthermore, as this court stated in *Visco* v. *Cody*, supra, 16 Conn. App. 450–51, the sanctions available for a violation of § 47a-7 "are not triggered until and unless evidence is adduced at trial establishing that there is a substantial violation or series of violations of housing and health codes *creating a material risk or hazard to the occupant* . . . ." (Emphasis added; internal quotation marks omitted.) Consequently, we conclude that to prevail in their action alleging violations of § 47a-7, the plaintiffs were required to demonstrate that the lack of repairs made to the swimming pool, furnace and chimneys affected the health, safety or habitability of the premises.

To the extent that the plaintiffs challenge the court's factual findings, after our thorough review of the record, we conclude that the court properly determined that the plaintiffs failed to establish that any of the alleged violations affected the health, safety or habitability of the premises, as required under § 47a-7. "In a case tried before the court, the trial judge is the sole arbiter of the credibility of witnesses and the weight to be afforded to specific testimony. . . . [When] the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Village Mortgage Co.* v. *Veneziano*, 175 Conn. App. 59, 69, 167 A.3d 430, cert. denied, 327 Conn. 957, 172 A.3d 205 (2017).

The plaintiffs contend that they have "presented substantial, uncontroverted evidence" to support their claims relating to the pool,[7] the furnace and the chimneys. None of their evidence, however, related to the safety, health or habitability of the premises. To the contrary, the court credited Davidson's testimony that the furnace did in fact function, and "reached a level of sixty-five degrees, which was legally sufficient, particularly in July" and that the failure to maintain the furnace in July did not constitute a threat to the health, safety or habitability of the premises. As to the chimneys, the court credited John Parrott's testimony that the plaintiffs did not suffer any injury or illness as a result of any issues with the chimneys and Davidson's testimony that the failure to clean the chimneys did not create a health, safety or habitability issue.

The court determined that none of the plaintiffs' claims was "so significant or so substantial that living under said conditions would be detrimental to the safety and welfare of the [plaintiffs]" and found that the plaintiffs "failed to prove by a fair preponderance of the evidence that the violations alleged in [their] complaint [rose] to the level of violations materially affecting the health, safety and habitability of the premises . . . ." We conclude that there was sufficient evidence in the record to support the court's determination that the plaintiffs failed to establish that any of their allegations constituted a violation of § 47a-7.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiffs maintained this action in the trial court as self-represented parties and brought this appeal in that capacity. After the appeal was filed, the plaintiffs retained counsel.

[2] General Statutes § 47a-14h (h) provides in relevant part: "On each rent due date on or after the date when the complaint is filed with the clerk of the court, or within nine days thereafter, the tenant shall deposit with the clerk of the court an amount equal to the last agreed-upon rent. . . . Payment to the clerk shall, for all purposes, be the equivalent of having made payment to the landlord himself."

[3] General Statutes § 42-150bb provides in relevant part: "Whenever any contract or lease entered into . . . provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. . . ."

[4] The plaintiffs only challenge on appeal the court's conclusion as to their claims relating to the swimming pool, the furnace and the chimneys, and have abandoned the remaining claims set forth in the complaint. In their brief, the plaintiffs acknowledge that they "did not present any substantial evidence to support their allegations with regard to the defendants' failure to maintain the trash compactor, the patio lights, nor the front doorbell

. . . .” They state, however, that they have “certainly proved, by a fair preponderance of the evidence, their factual allegations of the landlord’s failure to maintain (1) the pool; (2) the furnace providing heat to the second floor; and (6) the chimneys.” Therefore, we need not address the additional claims related to the trash compactor, patio lights and front doorbell.

[5] General Statutes § 47a-14h provides in relevant part: “(a) Any tenant who claims that the landlord has failed to perform his or her legal duties, as required by section 47a-7 . . . may institute an action in the superior court having jurisdiction over housing matters in the judicial district in which such tenant resides to obtain the relief authorized by this section and sections 47a-7a, 47a-20 and 47a-68 . . . .

“(b) . . . The complaint shall also allege that at least twenty-one days prior to the date on which the complaint is filed, the tenant made a complaint concerning the premises to the municipal agency, in the municipality where the premises are located, responsible for enforcement of the housing code or, if no housing code exists, of the public health code, or to the agency responsible for enforcement of the code or ordinance alleged to have been violated, or to another municipal agency which referred such complaint to the municipal agency responsible for enforcement of such code or ordinance. . . .”

[6] General Statutes § 47a-20 provides: “A landlord shall not maintain an action or proceeding against a tenant to recover possession of a dwelling unit, demand an increase in rent from the tenant, or decrease the services to which the tenant has been entitled within six months after: (1) The tenant has in good faith attempted to remedy by any lawful means, including contacting officials of the state or of any town, city or borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation, or of the housing and health ordinances of the municipality wherein the premises which are the subject of the complaint lie; (2) any municipal agency or official has filed a notice, complaint or order regarding such a violation; (3) the tenant has in good faith requested the landlord to make repairs; (4) the tenant has in good faith instituted an action under subsections (a) to (i), inclusive, of section 47a-14h; or (5) the tenant has organized or become a member of a tenants’ union.”

[7] The court determined that the plaintiffs’ claims alleging violations of § 47a-7 relating to the pool did not have merit. At trial, the parties stipulated that “the pool was not in working order, at least not to the plaintiffs’ satisfaction . . . .” They further stipulated that the plaintiffs had signed a pool/spa addendum that provided that the pool was “strictly an amenity and that the use of the amenity is not guaranteed under the terms of the lease.” On the basis of this evidence, we conclude that the court properly determined that the plaintiffs’ allegations regarding the swimming pool did not constitute a violation of § 47a-7 because the lack of repairs made to the swimming pool did not affect the health, safety or habitability of the premises, especially in light of the parties’ agreement that the swimming pool was “strictly an amenity . . . .”